**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **TIFFANY N. QUZACK-WHITE et al.,**<br>*Plaintiffs*<br>v.<br><br>**UNIVERSITY OF MARYLAND MEDICAL SYSTEM CORP., et al**<br>*Defendants.* | **CASE NO:** 8:26-cv-01276-TDC |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION**
**TO STRIKE AND PLAINTIFFS' CROSS-MOTION FOR SANCTIONS**

## I. INTRODUCTION

Plaintiffs file this Opposition to Defendants' Motion to Strike Portions of the Plaintiffs' Complaint and Improper Filings ("Motion to Strike") and cross-move for all available sanctions pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and this Court's inherent authority.

This is now the **third** attack by Defendants, through their counsel, on the same complaint paragraphs, advanced with the same miscited authority, by counsel who has never once proposed a qualifying meet-and-confer, served a procedural defective Rule 11 safe-harbor not, and refused to acknowledge almost a dozen notices of controlling authority she has received that shows this course Defense Counsel has taken is misguided. At that conference, this Court observed that ECF No. 23 would likely be "not of particular value other than spending the client's resources." Sadly, that observation has proven accurate.

Defense Counsel (who happens to be Caucasian lawyer) has repeatedly characterized lawful and zealous advocacy by Plaintiffs' counsel as "***aggressive***," "***hostile***," "***rambling and ranting***," and "***a campaign of extrajudicial harassment***" to a younger Black attorney who cited controlling Fourth Circuit authority, filed a CMO-compliant sanctions notice, and announced a publicly filed federal lawsuit on a professional network. The same conduct, from a different attorney, would attract no such characterization as the undersigned as seen his decade-plus experience in complex litigation representing Fortune 500 companies.

Yet Defense Counsel has done the following:

- Refused mandatory service waivers under Rule 4(d), threatened bar referral for being corrected, and relented only after nineteen days and direct outreach to UMMS general counsel.
- Sent a Rule 11 safe-harbor letter with a 10-day (not 21-day) cure period, no violation identified by Rule 11(b) subsection, no mention of the LinkedIn post, and no subsequent correction. A letter is not a motion. The clock never started.
- Cited a First Circuit case (Alvarado-Morales, 1988) for a Fourth Circuit Rule 12(f) argument; cited the same Fourth Circuit case (Renaissance Greeting

Cards) for a proposition it expressly rejects — in three successive filings — acknowledging only a "drafting error" while repeating the error.

- Invoked MARPC 19-303.6(a) to sanction the LinkedIn post while omitting subsection (b), which expressly authorizes announcing a filed lawsuit — a selective omission identified in writing on May 15, 2026 and never acknowledged.
- Seeks to restrict public docket access through a Rule 12(f) motion to strike — a new form of relief that was never sought in ECF Nos. 9 or 17, never raised at the May 21 CMC, (and requires a separate Motion to Seal under Local Rule 105.11 and a CMO Notice of Intent,
- Seeks sanctions but does not include any declaration, time records, or fee documentation
- Filed Exhibit 6 to ECF No. 23 the very complaint excerpts she characterizes as "scandalous" — publishing them on the unrestricted public docket in her own motion, without seeking leave to seal even though per the CMO, this exhibit will be filed on the public docket
- Sought to strike four Plaintiffs' filings — an authorized Notice of Intent, a Court-directed CMC Statement, a response to Defense Counsel's own unauthorized filing, and a notice of adverse authority — none of which is a pleading subject to Rule 12(f).

Enough is enough. As further explained below, along with the accompanying declaration, and as demonstrated in the Joint Record, Sanctions (along with outright denial of the motion to strike) are not only warranted but are required for this egregious conduct that includes total lack of appreciation for the federal judiciary process or respect for opposing counsel.

## II. Background for Opposition to Moton to Strike

The Complaint's preliminary statement describes the pre-litigation period as "a calculated, multi-month campaign of administrative gaslighting and professional stalling designed to weary a grieving family and shield a corporate medical system from accountability." Compl. ¶ 1. The Complaint further alleges that Tiffany's mother, Veronica Quzack, experienced a delayed medical intervention at the same health system in July 2022, three years before Tiffany's hospitalization. Compl. ¶ 2. Paragraphs 37, 38, and 40 describe the parties' pre-litigation communications. Defendants' claims representative

communicated with Plaintiffs on November 18, 2025, asserting that the standard of care had been met but making no mention of the endoscopy decision at the center of Plaintiffs' liability theory. Compl. ¶ 37.

On December 31, 2025, Defendants' claims representative stated in writing that the matter "does not lend itself" to presuit resolution. Compl. ¶ 38. A third review occurred in March 2026, at which point Defendants' position remained unchanged. Compl. ¶ 40. The Complaint also references a 9:19 AM text message from the morning of the critical clinical decision, which Plaintiffs identify as the key clinical record establishing the timing of the endoscopy determination. Compl. ¶ 37; ECF No. 15 at 5. Paragraph 59 and accompanying Footnote 1 on page 3 reference Defense Counsel's professional background in connection with the Complaint's allegations concerning the conduct of this litigation. Compl. ¶ 59 & n.1. Paragraphs 56 through 60 alleged prior medical malpractice verdicts involving Defendants, including a case identified in the Complaint as the Jamie White matter. Compl. ¶¶ 56–60 (The Wiggins Law Group's own footnote in ECF No. 23 acknowledges that it represented a co-defendant in that matter).

The Complaint also includes allegation s in Paragraphs 61 through 70 concerning a documented pattern of UMMS data security failures from 2018 to the present, including incidents involving the Electronic Health Record system, and identify a UMMS pharmacist, Matthew Bathula, in connection with EHR entries made during Tiffany's hospitalization. Compl. ¶¶ 61–70.

## III. Argument in Support of Opposition to Motion to Strike

### A. Legal Standard: Rule 12(f) – Drastic & Disfavored Remedy

Rule 12(f) applies only to "pleadings" as enumerated in Rule 7(a) — complaints, answers, and replies. This is not debatable as this Circuit has long held for decades that "Rule 12(f) motions may be ***directed only to material contained in pleadings***." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001); ***United States v. Fairchild***, 803 F.2d 1121, 1124 (4th Cir. 1986) (explaining that Rule 12(f) "applies only to pleadings," rejecting attempt to strike non-pleading material); *Anusie-Howard v. Todd*, 920 F. Supp. 2d 623, 627 (D. Md. 2013) (Rule 12(f) "is limited to pleadings as defined in Rule 7(a)," denying motion to strike exhibits and filings). *Brown v. Inst. for Family Ctr. Servs.*, 2005 WL

1168460, at *2 (D. Md. May 17, 2005) (a motion "is not a pleading" and "cannot be stricken under Rule 12(f)"); ***McLaughlin v. Copeland***, 435 F. Supp. 513, 519 (D. Md. 1977) (Rule 12(f) "is addressed only to pleadings, not to motions or other papers," refusing to strike non-pleading material).

Moreover, Rule 12(f) motions "are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001). The court "will view the pleading under attack in the most favorable light of the pleader." *Piontek v. Serv. Ctrs. Corp.*, No. PJM 10-1202, 2010 WL 4449419, at *3 (D. Md. Nov. 5, 2010). A motion will be denied unless the challenged language "bears no possible relation to the controversy and could cause prejudice." *Blevins v. Piatt*, No. ELH-15-1551, 2015 WL 7878504, at *5 (D. Md. Dec. 4, 2015) Material that touches a disputed factual issue should not be stricken before discovery. *Id*. Where relevance will depend on disputed facts developed in discovery, striking is premature. *Schultz v. Braga*, 290 F. Supp. 2d 637, 654–655 (D. Md. 2003).

### B. The Motion Fails as a Threshold Matter as to ECF Nos. 14, 15, 18, and 19 Because None Is a Pleading.

Defendant motion must be denied as to ECF Nos. 14, 15, 18, and 19 at the threshold, without reaching their content, because not one of them is a pleading subject to Rule 12(f). *See supra* Section III.A. Indeed, the attack on Plaitniffs' Counsel's Linkedin is directly violative of Maryland Rule 19-303.6(b)(1)–(2) expressly authorizes an attorney to announce that a civil action has been filed, identify the parties, describe the claims, and disclose information in a public record.

Defense Counsel invoked 19-303.6(a) in ECF No. 17 to sanction the LinkedIn post while omitting 19-303.6(b). ECF No. 17; ECF No. 23-1. That omission was identified in writing on May 15, 2026. ECF No. 19. It has not been acknowledged. Prior restraints on attorney speech are a "last resort" subject to strict scrutiny. In re Murphy-Brown, LLC, 907 F.3d 788, 796–97 (4th Cir. 2018). No jury has been empaneled. The post announced a publicly filed complaint. No such restraint is warranted.

Plaintiffs' Notice of Intent to seek sanctions, filed pursuant to CMO Section III.A.1 as an independent filing. A notice of intent is not a complaint, answer, or reply. ECF No. 15 is the Court-directed Case Management Conference Statement, filed pursuant to this Court's express directive in ECF No. 10 that the parties "consult with their clients and confer with each other on these issues in advance of the Case Management Conference." Compliance with a Court order is not a pleading. ECF No. 18 is Plaintiffs' response to Defense Counsel's own unauthorized supplemental notice (ECF No. 17), which was filed without leave of Court. ECF No. 19 is a notice of adverse authority, the very function of which is to inform this Court of controlling or persuasive cases relevant to the pending motion. None of these documents is among the seven pleadings enumerated in Rule 7(a).

Put simply, because none of ECF Nos. 14, 15, 18, or 19 is a pleading, Rule 12(f) has no application to any of them. The motion fails as to all four on this ground alone, without any analysis of the content of those filings.

**C. FRE 408 Does Not Bar the Challenged Allegations: Four Independent Grounds**

The challenged complaint paragraphs are not barred by Federal Rule of Evidence 408. FRE 408 governs admissibility at trial. It does not govern what may be alleged in a federal complaint, and Defense Counsel's own authority confirms this.

Rule 12(f) permits striking only four categories of matter from a pleading: "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). Evidentiary inadmissibility at trial is not among them. FRE 408 separately provides that evidence of offers to compromise and conduct during compromise negotiations is "not admissible" to prove or disprove the validity of a claim or its amount. Fed. R. Evid. 408(a). FRE 408(b) preserves such evidence for any "other purpose," including proving a party's intent or bad faith. Fed. R. Evid. 408(b).

Defense Counsel cites *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores*, Inc., 227 F. App'x 239 (4th Cir. 2007) — her own case — for the proposition that FRE 408 is an independent basis to strike complaint allegations. That is precisely what Renaissance Greeting Cards does not hold. The Fourth

Circuit in that case affirmed striking the settlement references on Rule 12(f) immateriality grounds, not FRE 408 evidentiary grounds. Id. at 246. The court expressly declined to merge the two standards. Defense Counsel has now cited this case in three successive filings — ECF Nos. 9, 17, and 23 — for a proposition it squarely rejects. After Plaintiffs' counsel identified this misreading in writing, Defense Counsel acknowledged a "drafting error" in ECF No. 17, then filed ECF No. 23 repeating the same reliance. The result is that Defense Counsel's own authority establishes the correct standard: Rule 12(f) immateriality — not FRE 408 evidentiary inadmissibility — is the operative test.

***First***: ***The Challenged Communications Are Not Settlement Offers***. FRE 408(a) protects only "conduct or statements made during compromise negotiations" and "offers to compromise." The December 31, 2025 correspondence from Defendants' claims representative stated this matter "does not lend itself" to presuit resolution. Compl. ¶ 38. A refusal to negotiate is not conduct during negotiations. It is a rejection of negotiations. FRE 408 does not protect it. Similarly, the November 2025 letter asserting compliance with the standard of care is a denial of liability — not an offer to settle, not a counteroffer, not any communication during a compromise discussion. Compl. ¶ 37.

***Second***: ***Defendants Cannot Invoke FRE 408 to Shield a Course of Conduct That Was Never a Genuine Negotiation.*** The policy rationale for FRE 408 is to encourage candid compromise discussions by protecting parties who genuinely participate in them. It does not protect a party who used the pre-litigation period to maintain a fixed position across three successive reviews while never once engaging with the central clinical question at issue. The documented pattern — November 2025 (compliance claimed, endoscopy decision not mentioned), December 31 (matter "does not lend itself" to presuit resolution), March 2026 (position unchanged) — is not a negotiation. **It is three refusals dressed as a process.** Defendants reviewed Plaintiffs' claim over four months and never addressed the 9:19 AM text message, never offered an explanation for the endoscopy timing, and never proposed any resolution. A party who declined to engage with the substance of the dispute cannot invoke a rule designed to encourage the very engagement they rejected. FRE 408 was not enacted to reward strategic non-participation in

settlement discussions by shielding the evidence of that non-participation from the record. Independently, even if these communications qualified as compromise negotiations, they remain admissible under FRE 408(b) to prove a party's intent. *Coakley*, 973 F.2d at 353–54. The intent this evidence establishes is not merely that negotiations failed — it is that Defendants never intended to address the clinical question at the center of this litigation..

***Third***: ***The Central Clinical Evidence Is Not at Issue***. Defendants have never claimed that the 9:19 AM text message — the clinical record documenting the timing of the endoscopy decision — constitutes a protected settlement communication. ECF No. 15 at 5. That concession forecloses FRE 408 as to the allegation on which liability turns. Whatever FRE 408 covers, it does not cover the central clinical fact Plaintiffs allege as the basis of their malpractice and gross negligence claims.

In sum, FRE 408 is an evidentiary rule. It is not a pleading rule. It does not govern what may be alleged in a complaint. The challenged paragraphs would survive even if the evidentiary standard applied — because the central communications are not qualifying compromise offers and the key clinical evidence is not at issue. The motion fails on this ground.

### D. Each Category of Challenged Allegations Is Material and Has a Logical Connection to This Controversy

The challenged complaint paragraphs are not barred by Federal Rule of Evidence 408. FRE 408 governs admissibility.

Federal Rule of Civil Procedure 12(f) authorizes a court to strike material from a pleading only if the challenged matter is "redundant, immaterial, impertinent, or scandalous." The Fourth Circuit has repeatedly emphasized that Rule 12(f) is a **disfavored** and **narrow** remedy, to be granted "sparingly." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001). In this Circuit, material may be stricken only when it "**bears no possible relation to the controversy and may prejudice the other party**." *Blevins v. Piatt*, No. ELH-15-1551, 2015 WL 7878504, at *5 (D. Md. Dec. 4, 2015). The court*

*must evaluate the challenged allegations "in the light most favorable to the pleader*." Piontek v. Serv. Ctrs. Corp.*, No. PJM 10-1202, 2010 WL 4449419, at *3 (D. Md. Nov. 5, 2010).

Where the relevance of an allegation turns on factual disputes or requires development of the evidentiary record, striking is **premature**. *Schultz v. Braga*, 290 F. Supp. 2d 637, 654–55 (D. Md. 2003). Courts in this District therefore decline to strike allegations that may bear on issues such as **state of mind**, **notice**, **pattern of conduct**, **institutional practices**, **punitive damages**, or **sanctions-related recklessness**, because each of these subjects is inherently fact-dependent and cannot be resolved at the pleading stage. See, e.g., *Queen*, 132 F.3d 991, 995 (4th Cir. 1997) (pattern and intent evidence); *Coakley & Williams Constr., Inc. v. Structural Concrete Equip., Inc.*, 973 F.2d 349, 353 (4th Cir. 1992) (pre-litigation conduct admissible for state-of-mind purposes); *Brubaker v. City of Richmond*, 943 F.2d 1363, 1382 n.25 (4th Cir. 1991) (§ 1927 requires knowing or reckless conduct); *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009) (institutional record-keeping practices relevant to spoliation).

Because Rule 12(f) is not a vehicle for resolving contested relevance, admissibility, or factual disputes, allegations survive so long as they have **any logical connection** to a claim or defense. If a plausible argument for relevance exists, the motion must be denied.

***Pre-Litigation Correspondence (¶¶ 1, 6, 37, 38, 40)*** Paragraph 1 describes a factual pattern. Paragraphs 37 and 38 reference the $10 million demand and claims manager discussions directly relevant to bad faith and punitive damages. Paragraph 40 references "resolution discussions." Each has been public since March 31, 2026. Each is directly relevant to one or more of Plaintiffs' claims. The Court has affirmed that plaintiffs are entitled to frame the narrative of their own complaints. Waste Mgmt., 252 F.3d at 347.

***Characterizations of Defense Counsel (¶ 59, fn. 1 p. 3)*** The sanctions standards — § 1927 and inherent authority — require showing the attorney acted knowingly or recklessly rather than inadvertently. An attorney of Defense Counsel's own publicly claimed experience should know that FRE 408 is a rule of evidence; should know that Rule 11 requires a separate motion served 21 days before filing; and should

know that Rule 12(f) is a disfavored drastic remedy not available as a vehicle for restricting speech or sealing public records. These references serve a cognizable pleading function. They are not scandalous.

***Litigation History, Data Security, and Veronica's 2022 Experience (¶¶ 2, 56–60, 61–70)***. Prior institutional conduct is probative of gross negligence and punitive damages. Veronica's 2022 experience at this same health system is a pattern allegation: same institutional actor, same type of delayed intervention, same family — three years before the hospitalization that put Tiffany in the ICU for 33 days. Prior verdicts against Defendants for similar conduct are publicly documented. The data security allegations are directly connected to the EHR spoliation theory and the documented conduct of Matthew Bathula. Blevins, 2015 WL 7878504, at *5 ("bears no possible relation to the controversy" is the test; these allegations bear a direct relation to the spoliation theory and punitive damages claim).

Defense Counsel cites *Smith v. Hercules Co.*, 204 Md. 379 (1954) for the proposition that evidence of prior incidents is "calculated to prejudice the jury." Smith is a 1954 Maryland Court of Appeals decision predating the Federal Rules of Evidence. It is not binding in federal court. Its proposed proposition is not confirmed in the text of that decision. This Court should disregard it.

### E. The Docket-Restriction Request Fails on Six Independent Grounds and Constitutes a Standalone CMO Violation

Defendants' request that this Court direct the Clerk to restrict public access to ECF Nos. 1, 14, 15, 18, and 19 must be denied. Six independent grounds each independently compel that result.

Public access to judicial records is protected by a qualified First Amendment right. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8–9 (1986). It is separately protected by a common law presumption of access to inspect and copy judicial records. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). The Fourth Circuit applies a compelling-reasons standard: any restriction must be supported by an overriding interest, established by specific factual findings, and narrowly tailored. *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004).

Rule 12(f) authorizes striking matter from a pleading. It does not authorize restricting public access to the docket. These are distinct procedural mechanisms with distinct legal standards. Even when a court grants a motion to strike, the stricken material remains on the public docket unless the court separately enters a sealing order. The proper vehicle for docket restriction is a Motion to Seal under Local Rule 105.11, supported by a specific compelling interest, consideration of redaction as a less restrictive alternative, and accompanying evidentiary support.

***Relief Never Previously Sought***. ECF No. 9 did not seek docket restriction. ECF No. 17 did not seek docket restriction. The May 21, 2026 CMC transcript (J.R. 000001–27) contains no discussion of sealing or docket restriction as a requested remedy. The request first appears in ECF No. 23, filed fifteen days after the CMC at which Defense Counsel confirmed Defendants' answer deadline is conditioned on this Court's ruling. J.R. 000025:22–25. A party cannot obtain docket restriction by embedding the request in a motion to strike as a last-minute add-on.

***CMO Violation***. No Notice of Intent, No Conference. CMO Section III.A.1 requires a Notice of Intent and Pre-Motion Conference before any motion that is not among the nine enumerated exceptions. A motion to seal is not among those exceptions. Defense Counsel filed no Notice of Intent on sealing. Plaintiffs' Counsel first encountered this request upon receiving ECF No. 23. This is not a technical defect. It is the exact bypass the CMO pre-motion process was designed to prevent. The request must be denied on this ground alone.

***First Amendment and Common Law Standards Not Met***. Defendants offer no sworn declaration, no specific compelling interest, no identification of concrete harm from continued public access, and no analysis of whether redaction would suffice. The compelling-reasons standard requires particularized evidence, not a request buried in a motion to strike. Virginia Dep't of State Police, 386 F.3d at 575.

***Three Months Too Late***. The Complaint has been on the public docket since March 31, 2026 — nearly three months before ECF No. 23 was filed. Generalized reputational harm and future settlement

prejudice do not overcome the presumption of access to a document that has been publicly available for that duration.

***Defendants Published the Challenged Material Themselves***. Exhibit 6 to ECF No. 23 (J.R. 000034–41) reproduces the complaint excerpts Defendants characterize as "scandalous" — on the unrestricted public docket, in Defense Counsel's own motion. ECF No. 23-1 at 16 simultaneously requests relief to "prevent the continued and irreparable dissemination of this scandalous material." A party who files the allegedly sensitive material in a public exhibit has no cognizable interest in restricting the same material on the docket.

The docket-restriction request fails on every one of six independent grounds. It is independently barred as a CMO violation. It requires a procedural vehicle — a Motion to Seal — that was never filed. It invokes a standard — compelling reasons — that was never attempted. And it asks the Court to restrict material that Defendants themselves placed on the public docket in Exhibit 6 to this very motion.

### F. The "Karen" Characterization Is Legally and Academically Grounded, Not Scandalous

***The Academic and Legal Framework***. ECF No. 19's footnote 1 cited two peer-reviewed law review articles for the specific behavioral pattern documented in this litigation: Chan Tov McNamarah, White Caller Crime: Racialized Police Communication and Existing While Black, 24 MICH. J. RACE & L. 335, 340–41 (2019), which documents the practice of invoking institutional authority against Black persons for conduct that would draw no such invocation from a similarly situated white person; and Megan Armstrong, From Lynching to Central Park Karen: How White Women Weaponize White Womanhood, 32 HASTINGS WOMEN'S L.J. 27, 29–31 (2021), which documents the specific pattern of white women invoking institutional authority to police and silence Black professionals while framing themselves as the aggrieved party. These are law review citations. Calling them "baseless" is itself factually incorrect. The pattern has been recognized by legislatures. San Francisco's CAREN Act (Caution Against Racially Exploitative Non-Emergencies), California Assembly Bill 1775, and New York Civil Rights Law § 79-n

each provide civil liability and criminal penalties for the weaponization of institutional authority against persons of color — recognizing the underlying behavioral pattern as an identifiable, actionable harm. The CAREN Act's sponsor stated that "911 is not a customer service line for someone's racist behavior."

***The Documented Conduct Fits the Pattern***. Each element of the documented behavioral pattern is in the Joint Record: refusing a mandatory federal procedural obligation while threatening bar referral for explaining the law; filing Rule 11 proceedings in response to a federal civil rights complaint filed by a Black attorney; seeking prior restraints on a Black attorney's professional speech; and framing each of these steps as a response to Plaintiffs' counsel's own misconduct. The characterization in ECF No. 19 is analytically grounded in that record — not in animus toward Defense Counsel personally.

***Announcing a Filed Lawsuit Is Authorized Professional Conduct***. Maryland Rule 19-303.6(b)(1)–(2) expressly authorizes announcing filed litigation and disclosing information in a public record. Defense Counsel invoked 19-303.6(a) to sanction the LinkedIn post while omitting 19-303.6(b) — the subsection that forecloses her argument. The courts agree. When Elon Musk posted "Scam Altman" on social media during jury selection in his own federal trial, Judge Gonzalez Rogers admonished him but declined to restrict his speech. *Musk v. Altman*, No. 4:24-cv-04722-YGR (N.D. Cal. Apr. 2026). Prior restraints on attorney speech are "last resort" measures requiring a showing of substantial likelihood of material prejudice to a fair trial. *In re Murphy-Brown*, LLC, 907 F.3d 788, 796–97 (4th Cir. 2018) (binding). No jury has been empaneled. The posts consist of publicly filed documents already on PACER. Under Defense Counsel's theory, every DOJ press release, every personal injury firm announcement, and every civil rights attorney who posts about a filed case would be subject to sanctions. That is not and has never been the law.

Defense Counsel's argument that ECF No. 19's academic characterization of her conduct is "scandalous" under Rule 12(f) fails on three independent grounds: ECF No. 19 is not a pleading; the characterization is grounded in peer-reviewed scholarship and directly connected to the § 1981 racial discrimination claim on the merits. This is a racial discrimination case. The operative Complaint alleges

discrimination under 42 U.S.C. § 1981. The behavioral pattern described in ECF No. 19 — invoking institutional mechanisms (Rule 11 threats, bar referrals, prior restraint requests) against Plaintiffs' counsel's lawful professional conduct, while framing each invocation as a response to counsel's own misconduct — is directly probative of the discriminatory conduct alleged in the Complaint. Where a characterization is not collateral to the pending matter but is instead connected to a cause of action on the merits.

Defense Counsel cites Pigford for the proposition that accusations of racism against opposing counsel are per se scandalous and subject to striking. Pigford does not establish that rule. In Pigford, class counsel filed a motion in a class action case and, in that motion, accused the assigned DOJ attorney of harboring "the same racist attitude of U.S.D.A. workers who systematically destroyed the farms and lives of thousands of farmers" and acting with "contempt for lawyers of color." 215 F.R.D. at 4. The court struck the accusations on three grounds: they were (1) factually unsupported — class counsel offered nothing to back them up; (2) directed at an individual opposing attorney's personal racial attitudes rather than at any institutional defendant or any substantive claim; and (3) entirely collateral to the pending motion before the court, which concerned a mail delay in a discovery dispute. Id. at 5. All three conditions are absent here.

First, factual support. ECF No. 19 did not make a bare accusation. It cited specific, documented conduct in the Joint Record — the service refusal and bar referral threat (J.R. 000030); the three successive filings advancing the same foreclosed argument (J.R. 000028–41); the selective invocation of MARPC 19-303.6(a) while omitting subsection (b); the embedded sealing request filed without CMO compliance; the eleven written notices generating zero responses — and it cited peer-reviewed academic literature describing the behavioral pattern that conduct exhibits. McNamarah, 24 MICH. J. RACE & L. at 340–41; Armstrong, 32 HASTINGS WOMEN'S L.J. at 29–31. Pigford's "unsupported by facts or evidence" rationale has no traction where the characterization is grounded in a factual record and academic scholarship.

Second, connection to a substantive claim. In Pigford, the racism accusation had nothing to do with any pending substantive claim — the class action was about discrimination by U.S.D.A. loan officers, not by the DOJ attorney named. The accusation was pure collateral fire. Here, racial discrimination under 42 U.S.C. § 1981 is a cause of action in the Complaint. Count [X] of the Complaint alleges that Defendants discriminated against Plaintiffs in the provision of medical care on the basis of race. The characterization in ECF No. 19 describes a documented litigation pattern that is directly probative of discriminatory intent on the merits. Where a characterization is not collateral to the case but is instead connected to a cause of action, Pigford's rationale does not apply.

Third, the nature of the target. In Pigford, class counsel attacked the personal racial attitudes of an opposing attorney who was not a party to the underlying claims. Here, ECF No. 19's characterization is directed at the documented pattern of conduct in this litigation as it relates to the institutional defendants' alleged discriminatory conduct — not at Defense Counsel's personal attitudes. The distinction is not semantic. Pigford drew a clear line between attacking a person and describing a pattern of conduct relevant to a claim. ECF No. 19 describes the latter.

***The Documented Conduct in This Litigation Fits the Pattern***. ECF No. 19's characterization is not a generic accusation of racial bias. It describes a specific documented litigation pattern: refusing a mandatory federal procedural obligation and threatening bar referral for receiving an email explaining the law; filing Rule 11 sanctions proceedings in response to a Black attorney's filed federal civil rights complaint and LinkedIn announcement; seeking prior restraints on that attorney's professional speech; characterizing his lawful advocacy as "aggressive," "hostile," and "rambling and ranting" across three successive filings; and framing each of these steps as a response to his own misconduct while committing systematic procedural violations. J.R. 000028–41; ECF Nos. 9, 17, 23. Every element of the characterization is traceable to a specific entry in the Joint Record.

The key question under Pigford is whether the characterization is "supported by facts or evidence." 215 F.R.D. at 5. The answer here is yes: the Joint Record is the facts and evidence. The academic literature is the framework for understanding what those facts and that evidence describe.

## I. PLAINTIFFS' CROSS-MOTION FOR ALL AVAILABLE SANCTIONS

### A. Background: The Complete Chronology — Eleven Notices, Zero Corrections

At the May 21 CMC, this Court stated that sanctions were "highly unlikely to succeed at this stage of the case given that all we have is a letter. There's really no course of conduct; that would require more than that." J.R. 000012:6–9. Defense Counsel then provided the course of conduct the Court said was absent:

- March 27, 2026 — Service Refusal (Notice 1). Firm "unable to accept service." Bar referral threatened for explaining Rule 4(d). Waives service nineteen days later. No explanation. No acknowledgment. J.R. 000030.
- April 3, 2026 — Defective Safe-Harbor Letter (Notice 1 of 11 documented). Ten-day cure; Rule 11 requires 21. No specificity by Rule 11(b) subsection. LinkedIn post not mentioned. Same-day response from Plaintiffs' counsel with citations rebutting every position. Letter never withdrawn or corrected. J.R. 000028–29.
- April 4, 2026 — Additional Authority Transmitted (Notice 2). Authority on vexatious litigation consequences, including that "threatening sanctions casually or as a matter of course has no place among officers of the court." No response.
- April 15, 2026 — Belated Rule 4(d) Compliance. Service waivers executed nineteen days after refusal, only after UMMS general counsel contacted. No acknowledgment of Rule 4(d) obligation.
- April 27, 2026 — ECF No. 9 Filed (Notice 3). Relies on Alvarado-Morales (1st Cir. 1988) for Fourth Circuit Rule 12(f) argument. No CMO compliance. No Local Rule 104.7 conference. No compliant safe-harbor notice. Jurisdictional error identified in writing same day.

- April 30, 2026 — Conference Invitation; No Response (Notice 4). Plaintiffs' counsel invites conference per ECF No. 10. Explains Rule 12(f) applies only to pleadings. Reiterates First Amendment controls speech. No response from Defense Counsel.

- May 6, 2026 — Unilateral Impasse by Email. No telephone call. No video conference. No in-person meeting. Declares impasse without addressing any of the controlling authority provided. J.R. 000031.

- May 9, 2026 — ECF Nos. 14 & 15 Filed (Notice 5). Eleven pages of briefing on controlling authority transmitted to Defense Counsel.

- May 10, 2026 — First Circuit Error Identified in Writing on Mother's Day (Notice 6). Written notice that ECF No. 9's principal Rule 12(f) citation is a First Circuit case with no precedential value. No response. No correction. No withdrawal.

- May 11–13, 2026 — Conference Offered but Errors Not Addressed (Notices 7 & 8). Conference offered conditioned on discussing speech restrictions. Additional binding authority provided same day. Conference does not occur.

- May 14, 2026 — ECF No. 17 Filed Eight Hours After Advance Notice (Notice 9). Defense Counsel notified that ECF No. 14 invokes inherent authority, not Rule 11. ECF No. 17 filed eight hours later. Acknowledges "drafting error". Provides no Fourth Circuit substitute. J.R. 000032–33.

- May 15, 2026 — MARPC 19-303.6(b) Omission Identified (Notice 10). ECF No. 17 invoked 19-303.6(a) to sanction the LinkedIn post; omitted 19-303.6(b) which expressly authorizes it. Omission identified in writing. Never acknowledged in any subsequent filing.

- June 5, 2026 — ECF No. 23 Filed (Notice 11 Ignored). Renaissance Greeting Cards miscited for the third time. Docket restriction sought without a Motion to Seal or CMO Notice of Intent. MARPC 19-303.6(b) still omitted. Eleven notices. Zero corrections. Zero acknowledgments.

**<u>B. The May 10 Correspondence Is Plaintiffs' Best Evidence for Sanctions</u>**

Defense Counsel features the May 10, 2026 email in ECF No. 23 as evidence of Plaintiffs' counsel's "hostility." This tactical decision inverts the record. By placing it before the Court, Defense Counsel has submitted Plaintiffs' best exhibit. The email documents: (1) Defense Counsel's unilateral impasse declaration despite this Court's directive to confer; (2) Defense Counsel's reliance on a 1988 First Circuit case for a Fourth Circuit proposition in a District of Maryland proceeding; and (3) Defense Counsel's procedural non-compliance with Rule 11.

Pointing out that an adversary is relying on a First Circuit case for a Fourth Circuit Rule 12(f) standard — in writing, with citations, before the CMC — is not hostility. It is what zealous advocacy and the duty of candor require. A reasonably competent attorney who receives this notice on April 27, April 30, May 9, May 10, and May 11–13 does not file a third motion repeating the error. Defense Counsel did. The choice to press the same legally foreclosed argument after being corrected in writing eleven times is not advocacy. It is the multiplication of proceedings that 28 U.S.C. § 1927 was enacted to sanction.

**C. Defendants Are the Primary Broadcasters of Their Own Alleged Prejudice**

ECF No. 23 argues the complaint allegations are so "scandalous" and "prejudicial" that the public docket must be restricted. Defense Counsel then filed those allegations as Exhibit 6 (J.R. 000034–41) — on the unrestricted public docket, in her own motion. A competent attorney who genuinely believed challenged material would prejudice her clients' reputation would have filed a motion to seal before filing a public motion republishing that material. Defense Counsel did neither. She cannot claim reputational injury from material she broadcast herself. The May 10 email characterized this outcome as a predictable consequence of escalation. Defense Counsel confirmed the prediction.

**D. Legal Standards for All Available Sanctions**

***i. Federal Rule of Civil Procedure 11***

Rule 11(b)(1) prohibits presenting any filing "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." The 1993 Advisory Committee Note is explicit: Rule 11 motions "should not be made or threatened for minor, inconsequential violations";

"should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings"; and must not be used "to intimidate an adversary into withdrawing contentions that are fairly debatable, to increase the costs of litigation." Fed. R. Civ. P. 11 advisory committee notes (1993). The April 3 letter demanded withdrawal of a 30-page federal civil rights complaint within 10 days because Defense Counsel found certain allegations "demeaning." That is Rule 11 weaponized. ECF No. 23 asks this Court to strike factual allegations because they are embarrassing. That is Rule 11 weaponized twice more.

The procedural prerequisites were also never met. The safe-harbor period "begins to run only upon service of the motion," not upon a letter. Fed. R. Civ. P. 11 advisory committee notes (1993); Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 393 (4th Cir. 2004) (en banc) (binding; service of a separate motion is a condition precedent). The April 3 letter was not a separate motion. The clock never started. ECF No. 23's Rule 11 request is procedurally defective on its face.

***ii. 28 U.S.C. § 1927***

Section 1927 imposes personal liability when an attorney "multiplies the proceedings in any case unreasonably and vexatiously." The Fourth Circuit requires bad faith as a precondition: "a finding of counsel's bad faith [is] a precondition to the imposition of fees" under § 1927. Chaudhry v. Gallerizzo, 174 F.3d 394, 411 n.14 (4th Cir. 1999) (binding) (quoting Brubaker v. City of Richmond, 943 F.2d 1363, 1382 n.25 (4th Cir. 1991) (binding)); EEOC v. Great Steaks, Inc., 667 F.3d 510, 522 (4th Cir. 2012) (binding) ("bad faith is a precondition"). Section 1927 "focuses on the conduct of the litigation and not on its merits." DeBauche v. Trani, 191 F.3d 499, 511 (4th Cir. 1999) (binding).

Bad faith is established here. Defense Counsel received written notice in eleven separate communications that her positions were foreclosed by controlling authority. She acknowledged a "drafting error" in ECF No. 17, then filed a third motion repeating it. She sought docket restriction without CMO compliance, without a motion to seal, and without ever raising it at the CMC. She invoked one subsection of a Maryland Rule while suppressing the subsection that defeats her argument. An attorney who

acknowledges an error and repeats it; who seeks unavailable relief through improper vehicles; and who files three successive motions advancing the same foreclosed arguments after eleven written notices acts in bad faith. In re Kunstler, 914 F.2d 505, 516–18 (4th Cir. 1990) (binding; sanctions appropriate where counsel knew or should have known the position lacked merit).

***iii. Court's Inherent Authority***

Courts have inherent authority to sanction bad-faith conduct that abuses the judicial process. Chambers v. NASCO, Inc., 501 U.S. 32, 44–46 (1991) (binding). The course of conduct here — eleven ignored written notices across 90 days, three successive filings advancing the same foreclosed arguments, a sealing request buried in an improper vehicle without CMO compliance, and an answer deadline conditioned on the outcome of a procedurally defective motion — constitutes bad faith warranting inherent authority sanctions in addition to, and independently of, § 1927 liability.

**E. Prospective Inherent Authority Sanctions**

Beyond attorneys' fees, this Court's inherent authority extends to nonmonetary, prospective sanctions calibrated to specific ongoing misconduct. Chambers, 501 U.S. at 44–46; Dietz v. Bouldin, 579 U.S. 40, 47 (2016) (inherent authority to manage docket and prevent delay).

First: Defense Counsel confirmed at the CMC that Defendants' answer deadline is conditioned on this Court's ruling on ECF No. 23. A procedurally defective motion that seeks unavailable relief through an improper vehicle cannot be permitted to function as an indefinite stay on the merits of a case involving a 72-day hospitalization and allegations of racial discrimination in emergency medical care. The Court should order a responsive pleading within 30 days of ruling.

Second: If Defense Counsel wishes to seek docket restriction, she must file a proper Motion to Seal under Local Rule 105.11 within 14 days — or the request is deemed withdrawn. Using the correct procedural vehicle is not a restriction on any substantive right. It is the minimum the rules require.

Third: The Court should issue a show-cause order requiring Defense Counsel to explain, within 14 days, why additional sanctions — including referral to the Client Protection Fund of the Bar of

Maryland and a requirement that Defense Counsel complete CLE instruction on FRCP Rules 11 and 12(f) before filing further dispositive motions in this Court — should not be imposed. This is not punitive. It is proportionate to a 90-day pattern of eleven ignored written notices and three successive filings advancing the same legally foreclosed positions.

**F. All Sanctions Available Are Warranted and Requested**

Plaintiffs request every form of available relief:

- ATTORNEYS' FEES under 28 U.S.C. § 1927 for all fees incurred from March 27, 2026 through the date of this filing as a result of Defense Counsel's vexatious multiplication of proceedings. Total: 45.0 hours × $719/hour = $32,355.00. See Declaration (J.R. 000042) and Invoice appended thereto.

- RULE 11 SANCTIONS against Defense Counsel personally for the substantively improper purposes advanced in ECF Nos. 9, 17, and 23: pressing positions that were never legally warranted; citing controlling Fourth Circuit authority for propositions it expressly rejects through three successive filings; invoking MARPC 19-303.6(a) while suppressing subsection (b); and seeking docket restriction through a Rule 12(f) motion without CMO compliance.

- INHERENT AUTHORITY SANCTIONS for the bad-faith course of conduct documented in the eleven-notice record, including the service refusal, the defective safe-harbor process, the three successive miscitations of the controlling Fourth Circuit authority, the repeated invocation of a wrong Maryland Professional Rule subsection, and the embedding of a sealing request inside a Rule 12(f) motion without CMO Notice of Intent or qualifying conference.

- ORDER TO FILE RESPONSIVE PLEADING within thirty (30) days of this Court's ruling on ECF No. 23, regardless of any pending motion practice. Dietz v. Bouldin, 579 U.S. 40, 47 (2016); Chambers, 501 U.S. at 44.

- ORDER TO FILE A PROPER MOTION TO SEAL under Local Rule 105.11, supported by specific compelling interest and analysis of less restrictive alternatives, within fourteen (14) days — or the docket-restriction request is deemed withdrawn.

- ORDER TO SHOW CAUSE within fourteen (14) days why additional inherent authority sanctions should not be imposed, including: (a) referral to the Client Protection Fund of the Bar of Maryland; (b) a requirement that Defense Counsel complete CLE instruction on Federal Rules 11 and 12(f) before filing further dispositive motions in this Court; and (c) any additional relief this Court deems proportionate to deter future multiplication of proceedings.

- ORDER that Defense Counsel's fees and costs in connection with ECF Nos. 9, 17, and 23 shall not be charged to Defendants, as each filing was procedurally defective from inception and advanced legally foreclosed positions despite repeated written notice.

## CONCLUSION

This dispute — the proper content of a federal complaint and whether one attorney may announce a public filing on a professional network — is a disagreement about professional etiquette that Defense Counsel has elevated to Article III federal court. This Court observed at the May 21 CMC that this case is "already spiraling out of control." J.R. 000010:24. The spiral has a single origin point: Defense Counsel's refusal, from March 27, 2026 forward, to engage with controlling authority, to confer in good faith, or to use the correct procedural vehicle for the relief she seeks. The Federal Rules of Civil Procedure, this Court's CMO, the Local Rules, and the First Amendment exist for weightier purposes than adjudicating whether a publicly filed federal complaint should remain on the public docket of the court where it was filed. This Court's resources are better deployed on the merits of an action involving a 72-day hospitalization, 33 days in the ICU, 27 days on a ventilator, and allegations of racial discrimination in emergency medical care.

The motion to strike must be denied. The docket-restriction request must be denied on six independent grounds, including as a standalone CMO violation. All available sanctions must be granted.

Dated: June 22, 2026

Respectfully submitted,

/s/ Douglas W. Jackson-Quzack
Douglas W. Jackson-Quzack, Esq.
D. Md. Bar No. 20223
(240) 355-0251 | Doug.Quzack.Esq@outlook.com
Counsel for Plaintiffs
Dated: June 22, 2026

**Certificate of Service**

I hereby certify that on June 22, 2026, a copy of the foregoing was filed via CM/ECF and electronically served on all counsel of record, including Anne M. McGinley, Esq. (amm@wigginslawpc.com) and Michael K. Wiggins, Esq. (mkw@wigginslawpc.com), The Wiggins Law Group P.C.

/s/ Douglas W. Jackson-Quzack