**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | | |
|---|---|---|
| TIFFANY QUZACK-WHITE, *et al.*, | * | |
| | * | |
| *Plaintiffs* | * | |
| | * | |
| vs. | * | Case No.: 8:26-cv-01276-TDC |
| | * | |
| UNIVERSITY OF MARYLAND | * | |
| MEDICAL SYSTEM | * | |
| CORPORATION, *et al.*, | * | |
| *Defendants* | * | |

**DEFENDANTS' OPPOSITION TO CROSS-MOTION FOR SANCTIONS**
**AND REPLY IN SUPPORT OF MOTION TO STRIKE**

The Defendants submit this Opposition to Plaintiffs' Cross-Motion for Sanctions (ECF No. 24) and Reply, in further support of their Motion to Strike (ECF No. 23).

## I. INTRODUCTION

With a weak case[1] and an apparent conflict, Plaintiffs' Counsel, Mr. Jackson-Quzack, has pushed for "pre-discovery mediation." (ECF No. 15 at p. 3) To strongarm this end, he has made Plaintiffs' case as toxic and costly as possible. Specifically, he wrongly portrayed and improperly disclosed the parties' confidential pre-suit settlement positions, included other immaterial, impertinent, and scandalous allegations in the Complaint and subsequent filings, inundated Defendants with over 80 pages of inappropriate emails, and engaged in other improper tactics described in Defendants Motion and set forth further below.[2] In addition, he has continued to publish some of his improper emails to third partes, made thinly veiled threats, along with a

---

[1] Plaintiffs lack a qualified medical expert to proceed in State court. Once the Court rules and the parameters of the Complaint are clarified, Defendants seek leave to file an appropriate Motion to Dismiss challenging the sole basis for federal question jurisdiction – similarly unsupported allegations of racial discrimination against Defendants. (ECF No. 23-2).

[2] Such tactics include posting spurious allegations on social media; attempting to communicate directly with an employee representative; and publicly accusing opposing counsel of, *inter alia*, racism and ageism. (ECF No. 23-1 at pp. 2-5).

frivolous claim for over $32,000 in monetary sanctions. Recent filings reveal Counsel has unreasonably multiplied proceedings by incorporating duplicative damage claims from an unrelated black mold case and submitting seemingly fabricated legal citations indicative of unchecked generative AI use in both matters.[3] Moreover, as a likely material damage witness in both cases, with no qualified exceptions, he has an apparent conflict under the Maryland Attorneys' Rules of Professional Conduct ("MARPC") 19-303.7 and likely should voluntarily withdraw.

Plaintiffs' cross-motion for sanctions is factually and procedurally baseless. It is predicated on a potential Rule 11 motion that Defendants referenced in a private, good-faith letter on April 3, 2026, but never filed. Plaintiffs' Counsel continued to press this claim well after any legitimate misunderstanding over the scope of Defendants' initial NOI (ECF No. 9) should have been clarified. (ECF Nos. 17, 23; **Exhibit 1**, J.R. at 000010 (pp. 10:17)). Crucially, Plaintiffs' NOI (ECF No. 14) never requested monetary sanctions and, for the reasons detailed in Defendants' Motion, cannot serve as the necessary predicate for relief under Rule 11.[4] (ECF No. 23-1 at p. 14). All reasonable efforts to meet and confer prior to filing Defendants' instant Motion were exhausted. (ECF Nos. 9, 17 and 23-1 at pp. 2-5). Additionally, Counsel's present claim for relief based on perceived acts or omissions beyond ECF No. 14 are not only unfounded but constitutes an impermissible "new motion" under his own strict interpretation of the briefings permitted at the Case Management Conference (CMC) of May 21, 2026. (ECF NO. 24 at p. 11; **Exhibit 1**, J.R. at 000022 (p. 22: 2-13)).

---

[3] As detailed in Section VII, Judge Paula Xinis recently issued a Show Cause Order in Case No. 8:26-cv-01018-PX, ECF No. 17 regarding Counsel's suspected use of fabricated AI citations. The Court is urged to scrutinize Plaintiffs' filings in this matter for similar deficiencies as numerous citations within ECF No. 24 are also inaccurate *See* **Exhibit 11**, J.R (000053-55).

[4] Plaintiffs' Counsel now claims he is not seeking Rule 11 sanctions as "primary relief," his letter of April 27th, emails of May 6-10th and even ECF No. 24, all refence Rule 11 without tendering Defendants a draft motion as required under Fed. R. Civ. P. 11(c)(2). (ECF No. 24 at p. 21)

If this Court is inclined to address attorney misconduct under its inherent authority or 28 U.S.C. § 1927—as Plaintiffs now urge—it would be highly appropriate to direct those remedies at Plaintiffs' Counsel.[5] At a minimum, **t**his Court has ample authority to grant the relief sought in Defendants' Motion.

## II. PLAINTIFFS' COUNSEL SABOTAGED THE MEET AND CONFER PROCESS IN A PATTERN OF PERSONAL ATTACKS SERVING NO PURPOSE OTHER THAN HARASSMENT AND TO PREJUDICE DEFENDANTS

Defendants' Motion to Strike outlined how Mr. Jackson-Quzack sabotaged the meet-and-confer process, publicly posting Defendants' private good-faith letter and launching baseless *ad hominem* attacks against opposing counsel, thereby creating an environment where candid dialogue between attorneys became impossible and, ultimately, thwarting the cooperative purpose of this Court's Case Management Order (CMO) (ECF No. 4). (ECF No. 23-1 p. 2-4)

At this early stage, undersigned counsel has received over 80 pages of hostile and concerning emails from Mr. Jackson-Quzack, compared to just 9 pages of standard procedural communications from Defense Counsel.[6] While the number of emails from Plaintiffs' Counsel are too numerous to review here, an Appendix of Key Unprofessional Communications through June 28, 2026, is attached as **Exhibit 12** (J.R 000056-173). Mr. Jackson-Quzack falsely and repeatedly accuses undersigned of racism and ageism in public filings and communications, simply for disagreeing with his legal positions and objecting to his unprofessional conduct.

Counsel's response to Defendants' June 5, 2026, Court-authorized Motion to Strike is illustrative. Within an hour of receiving the courtesy copy and exhibits, and without any

[5] Along with independent scrutiny under Local Rule 105(8)(a) for filing an unjustified sanctions motion.

[6] To balance the need for an accurate evidentiary record and the Court's duty to safeguard the integrity of judicial proceedings including insulating the future jury pool from inflammatory and abusive extrajudicial statements, Defendants rely on selected key emails and, concurrent with this Reply, filed a Motion to Seal these and other Exhibits under Local Rule 105.1.

engagement from undersigned, Plaintiffs' Counsel initiated a 2.5-hour barrage of venomous ad hominem attacks, characterizing Defendants' practice as a "clown show" and undersigned as a "preschool child." He hurled other insults, such as "[it] makes me wonder if English isn't your first language given the horrid legal practice" and "seek help and grow up personally." He mocked that his "9yo niece has thicker skin" because she was taught not to be "sleazy and deceitful." (**Exhibit 12**, J.R. 000157-000164). Most troubling, he issued the thinly veiled threat: "Hope yo8 [sic] are ready to dance" *Id.* (J.R. 000164).

This harassment resumed on June 23, 2026, the morning after filing his cross-motion, and continued into June 24th. Mr. Jackson-Quzack accused Defense Counsel of a "personal crusade" against him and spinning the defense while using "racist dog whistles." He claimed she was trying "to portray [him] as some crazy black hoodlum" and invoked the murder of Emmitt [sic] Till, telling undersigned that "countless Black Lives have been lost to a bullet or prison for this conduct you think is appropriate." (**Exhibit 12**,J.R 000165-000173).

In ECF No. 24, Mr. Jackson-Quzack attempts to legitimize these unwarranted personal attacks, which permeate both his private communications[7] and public filings, by distinguishing them from the sanctionable conduct in *Pigford v. Veneman*, 215 F.R.D. 2, 5 (D.D.C. 2003). He argues his "Karen" characterizations are not collateral, but rather "directly probative" of the § 1981 racial discrimination claims alleged in the Complaint. (ECF No. 24 at 13-14). This is legally absurd. Defense Counsel did not provide the medical care at issue. Conflating a defense attorney's standard litigation tactics—such as asserting adherence to federal rules—with the underlying Defendants alleged discriminatory actions is precisely the type of baseless, collateral attack

[7] Plaintiffs' Counsel raises long past issues like a missing single letter typo in his last name 4 months ago, the resolved 4(d) waiver dispute, etc., in a disingenuous effort to claim he is attempting to address substantive issues. (**Exhibit 12**, J.R. 000164)

*Pigford* explicitly prohibits. *Pigford*, 215 F.R.D. at *4-5 (“When the lawyers involved in this litigation resort to scurrilous accusations and inflammatory remarks about opposing counsel, no one wins…”). Plaintiffs' counsel's "academic framework" is nothing more than a post-hoc rationalization for his own unvarnished hostility towards undersigned counsel.[8] Nothing within either the peer-reviewed law review articles cited by the Plaintiffs, nor the case law and professional rules of ethics, permits Mr. Jackson-Quzack to continuously attack the character of opposing counsel in filings with this Honorable Court.

It should be readily apparent that the only person injecting personal hostility and manufactured racial animus into this litigation is Plaintiffs' counsel, whose continued efforts in ECF No. 24 attempt to wrongly undermine Defense Counsel in the eyes of the Court and prejudice the Defendants. Critically, his unchecked abuse and multiplication of proceedings will not cease until the Court intervenes decisively.

## III. <u>COUNSEL IS A LIKELY KEY DAMAGE WITNESS</u>

Mr. Jackson-Quzack’s recent filings confirm he is making duplicative claims for damages on behalf of the adult Plaintiffs against Avanath Largo Center, LLC under Case No. 8:26-cv-01018-PX before Judge Paula Xinis in an alleged black mold exposure case ("Black Mold case"). Not only do such duplicative claims unreasonably multiply proceedings but they expose an apparent conflict.

Counsel is the self-described "brother, protector and advocate” of lead Plaintiff Tiffany Quzack-White[9]—a person with cognitive disabilities and other special needs per the Complaint.

[8] Plaintiffs’ attempt to excuse the Complaint’s personal attacks (ECF No. 1 at p. 3 fn. 1 and ¶ 59) as necessary to plead § 1927 "recklessness" is a temporal impossibility. Because § 1927 applies exclusively to conduct multiplying proceedings *during* litigation, it cannot shield scandalous allegations regarding pre-litigation conduct.

[9] His mother Veronica Quzack and minor niece’s claims are derivative.

(ECF No. 1 at pp. 2 and 4; **Exhibit 13**, LinkedIn Profile Excerpts, J.R. 000172-181). He has already advised this Court in the case at bar that he "witnessed the injuries Defendants caused to his sister." (ECF No. 19 at p 2).[10] His personal, out-of-court knowledge is central to the core issue of damages.[11]

Per the Complaint, Tiffany went to Defendants' emergency room on October 5, 2025 and as a result of alleged medical negligence, Plaintiffs claim damages that include a "72-day hospitalization," "mechanical ventilation," and "permanent gastrointestinal injury." (ECF No. 1 at pp. 8, 11). Concurrently, his filings in the unrelated Black Mold case recast the medical care as "life-saving," while attributing the same damages to mold. Specifically, his First Amended Complaint of May 15, 2026, details the identical 72-day hospitalization, 33 days in the ICU, and 27 days on a ventilator, but explicitly avers these physical disabilities "are directly traceable to the mold exposure conditions in The Unit." (Black Mold Case, ECF No. 12 at ¶¶ 17-19). He reiterated this representation to Judge Xinis on June 8, 2026, a renewed Motion for TRO, attributing her 72-day hospitalization and ongoing disability to "the near-fatal long-term toxic mold exposure.[12]" (Black Mold Case, ECF No. 14 at p. 3).

The conflict here appears unavoidable. Because the lead Plaintiff suffers from alleged cognitive impairments and special needs, it is likely she will need someone to untangle and/or articulate her own medical timeline. Given his familial and personal involvement in Tiffany's life,

[10] Defendants Memorandum (ECF No. 23-1at p. 1) incorrectly directs the Court to ECF No. 18 at p. 2. By way of correction, it is ECF No. 19 at p 2.

[11] Along with the absent requisite medical testimony from one or more qualified expert.

[12] This claim is repeated later in the TRO, "Tiffany returned home after 72 days in the ICU **due to long term expose to toxic mold spores at the apartment operated by Avanath**… (Emphasis added).(*Id.* at p 22)

he is a key observer of her baseline and one, if not the only fact witness who might try to reconcile (if even possible) these overlapping causation claims.

Under MARPC 19-303.7(a), an attorney cannot act as an advocate at trial where they are a necessary witness unless a specific exception applies. None are present here: (1) The testimony does not relate to an uncontested issue, damages and alternative causation are the central disputes of this case; (2) The testimony does not relate to the nature and value of legal services; (3) Disqualification will not result in a "substantial hardship" on the clients. Mr. Jackson-Quzack has not and cannot raise this exception.[13]

## IV. COUNSEL'S CONTINUED PATTERN OF IMPROPER THIRD-PARTY PUBLICATIONS MUST STOP

In his Cross-Motion, Mr. Jackson-Quzack attempts to defend part of his extrajudicial smear campaign—which included posting Defendants' private, good-faith letter of April 3 (**Exhibit 2** at J.R. 000028-29) alongside contested Complaint allegations[14] on social media—by comparing his posts to a "DOJ press release." (ECF No. 24 at p. 13). This analogy fails completely. A sterile Department of Justice announcement does not include publishing opposing counsel's private correspondence on a professional networking site to air personal grievances; nor does it contain excerpts of pleadings with scandalous unsupported allegations against a defendant.

In response to Court warnings at the CMC to "just stop" social media posts (**Exhibit 1** at J.R. 000015 (pp. 15:3-7), Plaintiffs' Counsel complained the Court was "basically muzzling" him (*Id*. at p. 18:15-18); thereafter he continued to publish immaterial and scandalous allegations to third parties through emails. This reflects a broader pattern of improper circumvention. As noted

[13] An attorney well-versed in "complex federal litigation," he has valued this case at Ten Million Dollars ($10,000,000.00). (ECF No. 19 at pp. 1–2; ECF No. 1 at p. 12). There should be no shortage of qualified counsel capable of stepping in on a contingent fee.

[14] *See* ECF No. 23-1 p. 3; **Exhibit 6,** J.R. (000034.)

in ECF Nos. 17 and 23-1 (p. 3), Mr. Jackson-Quzack previously attempted to bypass Defense Counsel to send substantive communications directly to a represented executive, Aaron Rabinowitz. The Court explicitly warned against this practice. (**Exhibit 1** at J.R. 000015-17). Counsel previously excused that ethical breach with a hollow "no harm, no foul" defense simply because his misdirected email contained a typographical error. (ECF No. 18 at p. 7). Post CMC he altered his tactics but has continued a campaign of extrajudicial harassment.

In apparent retaliation for Defendants filing of the instant Motion, Plaintiffs' counsel courtesy-copied Matthew Moore, Esq., on both the June 5th "clown show" email and the June 24th "racist dog whistles" diatribe detailed above. (**Exhibit 12**, J.R.000157-000158;000167-000173). Mr. Moore is not affiliated with Defense Counsel's firm, nor does he represent any party in this matter. Instead, Mr. Moore represents the defendants in Plaintiffs' unrelated Black Mold case. There is no legitimate legal justification for copying him. Counsel's efforts to defame Defense Counsel and wrongly undermine their counsel in the eyes of the public prejudice the Defendants. The Court should also consider this misconduct when fashioning an appropriate remedy.

## V. <u>STRIKING PORTIONS OF THE COMPLAINT AND SUBSEQUENT FILINGS ARE PART OF AN APPROPRATE REMEDY</u>

By continuing his inflammatory rhetoric and improper conduct Plaintiffs' counsel has forced Defendants to make a sufficient (hopefully temporary) record of it, or risk being further prejudiced by his unchecked misconduct. After injecting immaterial, impertinent, and scandalous allegations that violate Rule 12 (f) and this Court's CMO (ECF No. 23-1 at pp. 6,7, 14-15) in his prior filings (and now with ECF No 24, Plaintiffs' exhibits) he essentially argues a *fait accompli.* Claiming public dissemination renders a motion to strike moot, Plaintiffs' Counsel inadvertently concedes that relief under Rule 12(f) alone is an insufficient remedy. He leaves the Court with only one viable alternative: exercising its inherent authority. At this early stage, striking the

offensive material and granting the companion Motion to Seal remain strictly necessary to insulate prospective jurors from his scandalous and prejudicial allegations. However, because these retrospective measures will not stop his ongoing behavior, the Court must also invoke its inherent authority to deter future misconduct and preserve the integrity of the judicial process.[15]

## VI. PLAINTIFFS' MOTION FOR SANCTIONS IS WITHOUT MERIT

Defendants incorporate ECF Nos. 9 and 17, and the Court's CMC comments questioning Plaintiffs' sanctions claim after confirming Defendants sought no Rule 11 relief. (**Exhibit 1**, Transcript at J.R. 000010-12 (pp. 10:7-12:16); ECF No. 23-1 at pp. 2-4). This legally baseless cross-motion warrants independent scrutiny under Local Rule 105(8)(a). It demands sanctions for a phantom Rule 11 motion and faults Defendants for a communication breakdown Plaintiffs' counsel deliberately engineered. Any sanctions for Defendants purported violations in ECF No. 23 are beyond the scope of permitted briefing and, more importantly, unwarranted.

### A. The March 27 Email and the Rule 4(d) Waiver

In an effort to flip the narrative, Plaintiffs' Counsel falsely claims that undersigned's email reply objecting to his unprofessional manner was over his request for a Rule 4(d) waiver. Instead, it was in direct response to his disparaging email of March 27, 2026, mocking her experience, reputation and accusing her of over billing. (**Exhibit 12**, J.R. 00057-00058). On April 15, 2026 — only 15 days after the Complaint was filed—Defense Counsel served a waiver of service to resolve the underlying procedural dispute.[16]

### B. The April 3rd Letter was Private and Plaintiffs' Concerns Heeded

---

[15] To the extent it finds Rule 12(f) procedurally inapplicable to secondary filings, this Court should still strike the improper public filings at ECF Nos. 14, 15, 18, and 19 under its inherent authority and/or for violations of its CMO Section III(A). (ECF No. 4) and other relief as to the misconduct.

[16] Notably, Rule 4(d)(1)(F) required the Plaintiff to give the Defendant "***a reasonable time of at least 30 days*** after the request was sent… to return the requested waiver." Fed. R. Civ. P. 4(d)(1)(F).

To resolve this dispute without Court intervention, undersigned counsel sent the aforementioned private letter to Mr. Jackson-Quzack on April 3, 2026, with legal authority supporting her request to remove the scandalous characterizations and settlement references in the next 10 days, or else Defendants would seek a show cause order under Rule 11. (**Exhibit 2** at J.R. 000028-29). The same day, Mr. Jackson-Quzack declined to amend the Complaint "absent a Court order," pointing out he was entitled to a 21-day safe harbor if such relief was sought. (**Exhibit** 12, J.R. 00065-00066). Defendants heeded his comment and never filed a Rule 11 motion. As noted, Plaintiffs' counsel proceeded to publicly post the good-faith letter and in so doing, had a chilling effect on future candid and productive exchanges between counsel. (**Exhibit 13**, J.R 000172-181).

### C. Defendants' NOIs did not Request Rule 11 Sanctions

In filing their NOI of April 27th Defendants opted to forgo a request for Rule 11 sanctions in favor of seeking leave to file the within Motion to Strike**.** Contrary to Plaintiffs' characterization, Defendants' original NOI only stated that "**should opposing counsel persist after this Notice, consider** further relief by limiting his improper extrajudicial publications and/or to show cause under Rule 11" (Emphasis added). (ECF No. 9)**.** Defendants' written representation to the Court of May 14th (ECF No 17), confirming the same and again at the CMC (**Exhibit 1**, Transcript at J.R. 00009-10 (pp. 9:25-10:17)), should have put any legitimate misinterpretation to rest.

### D. Plaintiffs' Counsel's Posturing and Baseless Fee Demands

An examination of the key communications between counsel attached as **Exhibit 12**, J.R.00056-000173) should reveal that Defendants made reasonable efforts to confer. Since April 3rd, Plaintiffs' Counsel has stood pat on his position. He played games with his availability to

confer all while sending antagonistic emails with Rule 11 fee demands and other sanction claims that are the antithesis of reasonable compromise.[17] *Id.*

Inadvertently or intentionally misconstruing Defendants' NOI of April 27th, Plaintiffs' Counsel fired off a string of four emails within hours of receipt, along with a formal letter entitled "Rule 11 - Safe Harbor Notice," copying uninvolved members of Defense Counsel's present and former firm without proper purpose. (**Exhibit 12**, J.R.00076-00083). The latter advised in pertinent part that he would be seeking Rule 11 sanctions "unless you withdraw your April 3, 2026, sanctions letter and your April 27, 2026, Notice of Intent within 21 days." (**Exhibit 12**, J.R. 00077-00080).

Consistent with this Court's Paperless Notice (ECF No. 10) of April 29th**,** undersigned wrote Plaintiffs' counsel on May 6th to advise him of Defendants' position regarding a Magistrate and mediation, noting that given his emails the parties were clearly at an impasse regarding ECF No. 9.[18] (**Exhibit 4** at J.R. 000031) Notably, prior to that time, Plaintiffs' counsel had never requested to meet and confer regarding the issues in his Rule 11 letter of April 27th - only referencing a desire to discuss "the statement for the case management conference." (**Exhibit 12**, J.R. 00081-00083;00085-000102).

Defense Counsel hosted a meet-and-confer by telephone on May 13th to discuss the issues set forth in ECF No. 10 and make a final effort to at least narrow the issues requiring Court attention. Following the call, Defense Counsel promptly emailed Plaintiffs' Counsel to confirm

[17] In contrast, Defense Counsel's communications demonstrate a sustained effort to maintain professional decorum and acted in good faith. (**Exhibit 12**, J.R. 00056;00059;00071;00072;00084;000123;000124; 000128-000129; 000156).

[18] As detailed in Defendants' ECF No. 17, in response between May 6th and May 10th Defense Counsel received another series of taunting and contradictory emails all while opposing counsel was claiming to be unavailable due to birthday and Mother's Day commitments. (**Exhibit 12**, J.R. 00085-000122).

they remained at an impasse on the initial issues and Plaintiffs' recent filings accompanied by Defendants' request they be withdrawn. (**Exhibit 5** at J.R. 000032-33). Plaintiffs responded by filing ECF Nos. 18 and 19, the impropriety of which is discussed in detail in Defendants' Motion (ECF No. 23-1 at p.3, 4 and 15). As noted in Defendants' Motion, Plaintiffs also rejected this Court's suggestion to edit the Complaint at the CMC. (*Id.* at pp. 4-5; **Exhibit** 1, J.R 000017-18 (pp. 17:5-18:18)).

### E. Sanctions for Post CMC Conduct Are Beyond Scope and Unwarranted

Plaintiffs demand a strict interpretation of Defendants' Notices (ECF Nos. 9 and 17), arguing that Defendants' Motion to Strike should have been limited to the Complaint only. (ECF No. 24 at p. 11). In support, they include reference to the Court's comments at the CMC: "Nobody's adding new motions beyond what's in these letters." (**Exhibit 1**, J.R. at 000022 (p. 22:18-20)). Applying this exact standard, the only relief Plaintiffs can seek is for conduct expressly noted in their own flawed Notice (ECF No. 14),[19] in which they never actually requested authorization to file a motion for monetary sanctions. The "Relief Sought" section of Plaintiffs' NOI asks only that the Court "address these matters at the May 21 CMC" and "order expedited briefing." (ECF No. 14 at p. 3). Plaintiffs further did not seek authorization for a Rule 11 motion—expressly stating their intent to rely solely on 28 U.S.C. § 1927 and inherent authority. (*Id.* at p. 2). By now introducing a substantive demand for monetary sanctions that was absent from their NOI, Plaintiffs have introduced a "new motion" in direct violation of the Court's CMC limitations.

*i.* <u>*Defendants' Motion to Strike was filed in Good Faith*</u>

Plaintiffs' argument outlined above ignores Defendants' underlying Notices (ECF Nos. 9 and 17) - which explicitly warned that Counsel's escalating misconduct would necessitate "further

[19] For reasons discussed in ECF No. 23-1 at p. 14.

relief" and "this Court's intervention." Crucially, at the CMC, this Court expressly authorized Defendants to consolidate these requests: “if you have any other forms of relief you are looking for that came up in [ECF No.] 17, the supplemental notice, you can throw it all in there together Ms. McGinley.” (**Exhibit 1,** J.R. at 000018-19 (pp. 18:24-19:15)). Defendants introduced no new motions; they merely defined the statutory and inherent mechanisms required to effectuate the relief already outlined in those Notices.

The disfavored nature of such a Rule 12(f) motion does not foreclose the Defendants’ ability to file a valid one or give rise to Rule 11 sanctions. In deciding whether a legal contention fails to satisfy Rule 11(b)(2), the Court will apply a standard of objective reasonableness, focusing on whether a reasonable attorney in like circumstances could have believed their actions to be legally justified. *In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998). "'The legal argument must have absolutely no chance of success under the existing precedent' to contravene the rule." *Morris v. Wachovia Sec'ys, Inc.*, 448 F.3d 268, 277 (4th Cir. 2006) (quoting *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002)).

This Court has ample authority to strike the offensive material detailed in Defendants’ Motion pursuant to Rule 12(f) especially when coupled with its inherent authority, Fed. R. Civ. P. 83(b), and Local Rule 105 (D. Md. 2025). (ECF No 23-1 at pp. 6-7).[20]

*ii.* <u>*Defendants’ Reliance on Renaissance is appropriate*</u>

Defendants properly cited *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 227 F. App'x 239 (4th Cir. 2007), for the premise that allegations detailing pre-litigation settlement

---

[20] *See Dietz v. Bouldin*, 579 U.S. 40, 47 (2016). *See also e.g. McLaughlin v. Copeland,* 435 F. Supp. 513, 520-521 (D. Md. 1977) (Striking portions of Affidavits filed by the Plaintiff in response to a Motion to Dismiss); *Asr v. Giftos,* No. 3:21-CV-00670-FDW-SCR, 2023 WL 4111405, 2023 LX 93122, *14 (W.D.N.C. June 21, 2023) (Discussion of Prior Striking of meritless, duplicative, harassing, and abusive motions pursuant to Rule 12(f)).

negotiations are immaterial and subject to being struck. Plaintiffs incorrectly argue that the Fourth Circuit "expressly declined" to merge the standards of FRE 408 and Rule 12(f). To the contrary, *Renaissance* authorizes using FRE 408 in conjunction with Rule 12(f) to determine immateriality.[21] In affirming the district court, the Court of Appeals in *Renaissance* made clear that because the plaintiff's settlement allegations failed to meet an exception under FRE 408, they lacked probative value. *Id.* at 246-47. Relying on *Stern's Miracle-Gro Prods., Inc. v. Shark Prods., Inc.*, 823 F. Supp. 1077 (S.D.N.Y. 1993), the Court found this failure "militate[d] against admission of the disputed paragraphs," rendering the lower court's decision to strike them under Rule 12(f) "reasonable and not overreaching." *Id.* at 247. The correct test under *Renaissance* is straightforward: if the allegations do not meet an exception under FRE 408, they are considered immaterial and may be struck under Rule 12(f). Plaintiffs have simply misconstrued the holding.

*iii.* *<u>Plaintiffs' Attempt to Frame Settlement Positions as "Intent" Fails Under FRE 408</u>*

Settlement negotiations are not admissible or probative when they may be considered admissions as to the merits of the action. *Renaissance*, 227 F. App'x at 247 (citing *Stern*, 823 F. Supp. at 1088 n. 8). Defendants' decision to end settlement negotiations, or their stated positions regarding Plaintiffs' claims, are not probative and do not meet a single exception to FRE 408. Specifically, Plaintiffs' argument that Defendants never "intended to address the clinical question" is a transparent attempt to establish fault. Allegations relating to Defendants' purported admission or omission of liability are highly prejudicial and serve only to poison any potential jury and the

[21] Notably, any reference to FRE 408 is absent from the "Legal Standard" section of their Motion (ECF No. 23-1 at pp. 5-7). FRE 408 was raised exclusively in the Argument section to inform the Rule 12(f) immateriality analysis, demonstrating it was never offered as a standalone basis for relief.

public. Because the inclusion of these negotiations serves no purpose other than attempting to prove liability, they must be struck as immaterial.

## VII. PLAINTIFFS' IMPROPER CITATIONS WARRANT SCRUTINY

Plaintiffs' Cross-Motion conspicuously lacks a Table of Authorities, in direct violation of this Court's CMO. This omission appears to be a calculated effort to obscure the use of fabricated and/or improper case law generated by artificial intelligence.[22] Because Judge Xinis recently issued a Show Cause Order in Counsel's Black Mold case regarding identical concerns (Black Mold case ECF No 17), Defendants request this Court take judicial notice of that Order and review the attached chart of inaccurate citations (**Exhibit 11**, J.R 000053-55). This will allow the Court to investigate similar irregularities in the present briefing and consider an appropriate remedy.

## VIII. CONCLUSION

Plaintiffs' counsel has severely prejudiced Defendants by abandoning professional advocacy for extrajudicial harassment and scandalous allegations. Defendants respectfully request the Court strike the contested portions of the Complaint under Rule 12(f). To the extent it finds Rule 12(f) is procedurally inapplicable to secondary filings, the Court should strike the improper public filings at ECF Nos. 14, 15, 18, and 19 under its inherent authority and for violations of CMO Section III(A) and grant the other relief requested in Defendants' pending Motions.

Plaintiffs' cross-motion for sanctions is factually baseless, procedurally flawed and should be denied in its entirety. Given the totality of the misconduct described above and the Show Cause Order regarding Counsel's fabricated citations in a concurrent matter, this Court should independently scrutinize Plaintiffs' conduct under its inherent authority Local Rule 105(8)(a) and/or 28 U.S.C. § 1927, directing any appropriate remedies strictly at Plaintiffs' Counsel.

---

[22] Plaintiffs' counsel also had to withdraw his initial "Declaration," in support of Plaintiffs' Cross-Motion for Sanctions as it contained comments from AI. (ECF No. 24-1, 24-2, 25).

Date: July 6, 2026

Respectfully submitted,

**THE WIGGINS LAW GROUP, P.C.**

Michael K. Wiggins, Esq. (Bar No.: 12466)
mkw@wigginslawpc.com
Anne M. McGinley, Esq. (Bar No.: 05775)
amm@wigginslawpc.com
10211 Wincopin Circle
Suite 302
Columbia, MD 21044
Tel: (410) 935-1853
*Counsel for Defendants University of Maryland Medical System Corporation, University of Maryland Capital Region Medical Center, and Maryland Medicine Comprehensive Insurance Program*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of July 2026, I served the foregoing electronically:

Douglas Jackson-Quzack, Esq.
3000 Great Oak Drive
District Heights, MD 20747
Doug.Quzack.esq@outlook.com
*Counsel for Plaintiffs*

Anne M. McGinley, Esq. (Bar No.: 05775)