Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

- - - - - - - - - - - - - - - - x

TIFFANY QUZACK-WHITE, et al., : Civil No. 26-01276-TDC

Plaintiffs,

v.

UNIVERSITY OF MARYLAND MEDICAL SYSTEM CORPORATION, et al.

Defendants.

- - - - - - - - - - - - - - - - x May 21, 2026

Greenbelt, Maryland

**TELEPHONIC CASE MANAGEMENT CONFERENCE**

BEFORE: THE HONORABLE THEODORE D. CHUANG, Judge

APPEARANCES:

DOUGLAS W. JACKSON-QUZACK, ESQ.
Law Offices of Douglas William Jackson-Quzack
3000 Great Oak Drive
District Heights, MD 20747
On Behalf of the Plaintiffs

ANNE MARIE McGINLEY, ESQ.
MICHAEL K. WIGGINS, ESQ.
The Wiggins Law Group, P.C.
10211 Wincopin Circle, Suite 302
Columbia, MD 21044
On Behalf of the Defendants

Audio Operator: Dianne Solomon

Transcription Company: Willow Transcription
125 Holly Creek Court
Woodstock, Georgia 30188
(301) 577-5882

Proceeding recorded by electronic sound recording, transcript produced by transcription service.

# I N D E X

| | Page |
|---|---|
| Preliminary Matters | 3 |
| Discussion Re: Mediation | 4 |
| Discussion Re: Magistrate Judge | 8 |
| Discussion Re: Motions | |
| by the Court | 10 |
| by Douglas W. Jackson-Quzack, Esq. On Behalf of the Defendants | 12 |
| by Anne Marie McGinley, Esq. On Behalf of the Plaintiffs | 15 |
| Rebuttal by Douglas W. Jackson-Quzack, Esq. | 18 |
| Discussion Re: Briefing Timeline | 19 |

P R O C E E D I N G S

(Whereupon, at 9:59 a.m., the hearing began.)

THE CLERK: The matter now pending before this Court is Civil Action Number 26-1276-TDC, Tiffany Quzack-White, et al., versus University of Maryland Medical System Corporation, et al. We are here today for the purpose of a case management conference.

Beginning with the plaintiffs, Counsel, please identify yourselves for the record.

MR. JACKSON-QUZACK: Good morning, Your Honor. Douglas Jackson-Quzack on behalf of the plaintiffs.

THE COURT: Good morning.

MS. McGINLEY: Good morning, Your Honor. Anne Marie McGinley on behalf of the University of Maryland Medical System defendants and MMCIP.

THE COURT: Okay. Good morning.

MR. WIGGINS: And good morning, Your Honor. Michael Wiggins on behalf of the same defendants.

THE COURT: Okay. So we're here for a case management conference. The -- before we get to the motions that are being proposed, I want to start by asking if this is a case in which the parties might agree to have it subjected to a mediation session before a magistrate judge. Now our mediation sessions usually are scheduled two to three months out. So even if you're not ready right now, but you expect to

be ready for a mediation in that timeframe, we can put you on the list. Is that something of interest to the parties?

MR. JACKSON-QUZACK: Your Honor, Douglas on -- Douglas Quzack on behalf of the plaintiff. Plaintiffs are more than amenable to mediation. In our one meeting -- my one meeting with defense counsel, that is exactly what I offered.

When they -- their response was they didn't want to do mediation until after discovery, I said, I'm fine with that. But, you know, we can still do mediation at the front end just like as we explained in our filing, that we can lay our cards out on the table now. And, you know, like you said, we're going to be on a list. It's going to take some time.

So, yeah, it's like I was a little bit taken aback by defense counsel's insistence that they're not going to budge on doing mediation until after discovery happens. And then when I asked defense counsel like the reason, they said, well, just because you filed in federal court, we're still entitled to an expert for it.

And I said, well, that may be true, but under the Supreme Court's holding which reaffirmed the Fourth Circuit's holding that the State procedural prerequisites of a qualified expert do not apply in federal court, and so it's a bit putting the cart before the horse in terms of talking about expert opinion when we haven't even done a case management conference. We haven't done a discovery plan. We haven't

talked about mediation.

And so Plaintiffs are more than willing and are agreeable to mediation because that is what we would like is hopefully expedited resolution of this matter.

THE COURT: Okay.

Ms. McGinley or Mr. Wiggins, what about mediation?

MS. McGINLEY: Yes, Your Honor, I have -- we conferred with our clients in this case, and unfortunately we are not in a position to do mediation early at this stage. I have -- we have discussed it at length with our clients.

This is obviously an interesting case. There's a -- an allegation of a racial discrimination in medical treatment and an allegation of medical negligence. And I understand Plaintiff Counsel's reliance on the recent Supreme Court decision. However, there has been no expert support put forth with respect to the allegations in this case, and we will not be in a position in two to three months, or even probably later than that, to participate in a mediation session.

MR. JACKSON-QUZACK: Your Honor --

THE COURT: Okay. Well --

MR. JACKSON-QUZACK: -- can I just respond really quickly to that point?

THE COURT: Well, okay, quickly, because the last response, you know, all I wanted was a yes or no. I don't really need an explanation on whether people want to have

mediation.

MR. JACKSON-QUZACK: Okay, yeah, but -- okay, (indiscernible) --

THE COURT: Now we don't normally send it off for mediation unless -- we don't normally send it off for mediation unless both sides are interested in it because it's not worth our (indiscernible) time to deal with that. So even if one side is arguably being unreasonable versus the other side, it doesn't matter to me.

We're only going to send it off right now for the parties that are both interested because we have plenty of other cases where the parties are both interested. We don't want our, our mediators are wasting their time when one side is not ready, even if the other side legitimately thinks maybe they should be ready. So that's kind of how we handle the mediation issue.

Anything you want to offer on that point?

MR. JACKSON-QUZACK: I understand your point, Your Honor. This is Douglas Quzack on behalf of the plaintiffs. I will just say that defense Counsel reiterated the point, and despite all of those allegations that she has laid out there, the core allegation is delayed intervention with an endoscopy procedure.

This is a defendant that is a medical institution. They have reviewed this case three times on their own and have

been insistent that there is no -- nothing they see wrong. In fact, they even said in their first letter to my client, Ms. Veronica Quzack, that they complied with the standard of care.

So when Ms. McGinley sits -- says to this Court that they're not in a position for months, I'm just a little taken aback and confused given that they have said to me that they have done review of this case. And so what I'm saying is maybe we do need a third-party, neutral mediator to look at both sides and see what's really going on.

And I understand your point, Your Honor, about the other side. You know, even if they don't want to, they're not going to order it. I just want it on the record that Plaintiffs' point is despite all those allegations and all those concerns, the core allegation is the delayed intervention endoscopy decision. That is not that complicated. That is not that controversial, that all the science, all the articles are there.

And to say they don't -- they need an expert opinion to justify or to validate that is really putting the cart before the horse because again we're talking about factuality issues. We haven't done discovery yet, and they have all the discovery. They have the medical records. They have the correspondence saying they reviewed this case.

So again, I am just a little bit confused, and I

understand Your Honor's point even if they don't want to do it. But I don't understand what the wait is for when this is a medical institution defendant that has all the records, all the witnesses, all discovery.

In fact, the core allegation is the late intervention of 24 hours, so there's really not that many witnesses to depose or to actually speak to because a lot of people weren't there other than Ms. Quzack-White and her mother and the nurse that decided to not give the endoscopy within 24 hours.

That to me is a very simple and straightforward medical malpractice case that can be resolved next --

THE COURT: Okay, so I'm (indiscernible) now, Mr. Quzack. Mr. Quzack, this is a scheduling conference. This is not an argument discussion, okay? I really need to move on in the next step of this. We have another scheduling conference right after this one. So if you're going to argue the case now, that's really not the purpose of the conference here.

So my next question is I see that we already have three or four proposed motions in front of us. I want to ask if the parties might be agreeable to having this case transferred to a U.S. magistrate judge to become the presiding judge in the case.

Now if you are not familiar with our program here,

our magistrate judges, as you know, they're appointed by the District Court, right? Their terms -- they're highly qualified. In fact, about half of our district judges used to be magistrate judges.

But they have far fewer civil cases than the district judges. They don't handle any (indiscernible) criminal trials here (indiscernible), motions, which the criminal matters always have to take precedence over any civil matters. They also have far fewer civil cases.

They're not handling any of the complex, time-sensitive challenges to the Executive Branch action, which our court is getting in -- has been getting since last January in higher numbers than, than usual. They also are not handling any of the many immigration habeas petitions that the court is getting in large numbers presently, which are also time-sensitive and largely do have to take precedence over other civil matters. So you may got more focused attention on your case with a magistrate judge as your presiding judge.

Is that something the parties might agree to in this case?

MS. McGINLEY: Your Honor, this is Anne Marie McGinley. The parties did confer on this issue and both parties agree that they would like the case to, to remain with Your Honor.

THE COURT: Okay. Well, if that changes at any

point and the parties jointly would like to make that transfer, just let me know and we can arrange for that. Sometimes if discovery gets going -- all the discovery disputes will be handled in the first instance by the magistrate judge anyways, and so -- and that doesn't require your consent.

But sometimes they learn the case and they get to know you all and it's more efficient to keep it with that person. So keep that option open as we go forward.

The next issue is the motions. I'm a little here -- I'm, I'm not sure what happened here. We had a motion to strike proposed by the defense. I didn't see any reference in it -- well, maybe I'm missing it. Let me look again. I mean, there was a -- there was some reference to Rule 11, but it wasn't a Rule 11 motion. And so then that prompted a response --

MS. McGINLEY: It was not, Your Honor.

THE COURT: Well, but it was mentioned, and then there was a response from the plaintiff raising concerns about Rule 11 and, and suggesting sanctions. And then there's a follow-up proposal by the defense which raises different issues about things outside of the complaint, just activity that's going on.

So we're already spiraling out of control in this case. The -- part of the reason why we have these conferences

is to try to at least keep -- at least keep the motion practice in a manageable structure and creating efficiencies across them.

So my initial point is, without having -- not getting into the merits of the -- of the motion, is that normally the first thing we do at this point when the complaint's been filed is we get an answer filed, possibly a motion to dismiss some count here or there if that's appropriate.

What I think the parties are suggesting we do is have litigation on two to three different motions before we even get to that first step, which is early in the case. So if we seek to strike things from the complaint that -- you know, if they're not helpful to the case, they're not helpful to the case. It's not clear why they need to be struck.

And if we try to argue about sanctions over a, a letter that was written, you know, this doesn't always seem like the most productive use of everyone's time even at any point in the case, and we're going to probably spend about four or five months at, at minimum because -- given all those other cases I have mentioned to you that we all have.

I mean, you file your motions. It takes about six weeks to brief them, two weeks between each brief. Then they go in the queue with all the other civil cases and you may get a ruling on your motion to strike in, in this whatever the

motions are about Rule 11 sometime in the fall. And then that's before we do anything in the case.

So this does seem like the kind of thing where maybe the parties could work it out among themselves as to whether we can live with the complaint as it is and whether we really need to pursue motions for sanctions, which are highly unlikely to succeed at this stage of the case given that all we have is a letter. There's really no course of conduct; that would require more than that.

But, you know, I'm not going to prevent these motions from being filed. I'm just pointing out that if one side really wants relief for the claims in it and the other side wants to make this case get resolved, I'm not sure if this process is the most efficient for that.

So does everyone want to continue to file all these motions before we even get to the real part of the case?

MR. JACKSON-QUZACK: Your Honor, this is Mr. Quzack on behalf of the plaintiffs. Plaintiffs do not want to -- Plaintiffs have said from the moment that Ms. McGinley refused to receive service that we do not want to get dragged into collateral litigations.

When Ms. McGinley first raised the issues about the, the motion to strike, I promptly informed her that under circuit precedent, being highly disfavored, the Rule (indiscernible) motions, and that pretty much the standard is

they're highly disfavored because, one, you're trying to editorialize the plaintiffs' -- the plaintiffs' way they are framing the complaint, which a plaintiff entitled to do. They're (indiscernible) the complaint under Fourth Circuit precedent.

And, two, raising issues that were not properly raised with the -- with me before even coming to the Court, such as (indiscernible), which doesn't apply to a motion to strike. And all I've done was post a summary of the complaint that Ms. McGinley said was violating the Maryland rule on trial publicity even though there is a safe harbor provision that allows me to do the same thing that district -- I'm sorry, DOJ attorneys do, that district attorneys do whenever they prosecute a case is issue a press release.

And all I've done is done that, and we've gotten into this back-and-forth because they don't like that. And that's what I've been telling them is that I understand you don't like that, but that's not -- that is not a justification for a motion to strike, to invoke Rule 11, to call me aggressive, to call me all these names, when all I'm telling you is this is what the law is and that we don't need to get bogged down on this and we should focus on the merits.

I have been saying that in all of my communications that defense counsel has characterized me as, as aggressive, rambling and ranting when all I keep saying is this is a waste

of time because we don't need to go down this road.

Plaintiffs do not want to get -- like I said, I would like to mediate immediately, but I understand that we can't if one side is not willing. I would not like to get bogged down in these motions, but when opposing counsel is, is refusing to even come to the table and talk to me, to say to this Court that we reached an impasse and therefore we're just going to proceed with our motion without even talking to me, I, I have no other recourse than to come to the Court and say, let's get this sorted out, which I agree with Your Honor, way too much motion practice.

I would love to have a conversation with defense counsel to get this sorted out and explain to them again I really don't understand the issues that you have with (indiscernible) because it's in line with the Fourth Circuit, because I understand the law and I understand the standard, and that's what I applied when I wrote and drafted the complaint.

And so I am happy to have that conversation with Ms. McGinley and Mr. Wiggins if they are open to it because that's all I have been trying to do is say, this is a waste of time. Let's talk about this.

THE COURT: Well, okay. So what I -- maybe I can hear from Ms. Wiggins -- Ms. McGinley first just for equal perspective on this. But again, you know, I think -- I don't

think either side really wants to get bogged down in extensive litigation over a few lines in the complaint.

There are some issues in some of these letters maybe we can just iron out now, like, you know, why anybody would be posting about a case in social media or talking to represented parties. If those things are happening, they should just stop and we can -- we can sort that out.

But we don't -- I don't think we need full briefing on these kinds of things, and as I said, motions to strike usually don't accomplish any -- they're usually not of particular value other than spending the client's resources.

So, Ms. McGinley, what do you think we should do here? Do you want to have three or different motions flying back and forth or is there another way to do this?

MS. McGINLEY: Your Honor, and I, I am trying to streamline this case myself. I -- you know, I filed my -- pursuant to the case management order, we filed our initial notice of intent.

My concern, Your Honor, is the complaint that was filed in this case by Plaintiffs' counsel, it contains demeaning and derogatory allegations against our clients as well as me personally. Also, in violation of Maryland law, there are pre-litigation settlement discussions contained within the complaint along with our clients' prior litigation history. None of that needs to, nor should it, be included in

the complaint, and it goes on for pages.

And there's also allegations about prior data breaches at the University. That has nothing to do with the case at hand, and that's why we filed the motion to strike because I don't think the complaint as it stands is proper with the allegations that are contained in there. There's a personal attack against me in the complaint, and I don't believe that's part and parcel of what should be contained.

THE COURT: What page is that on? Can you point out to me what page that is on?

MS. McGINLEY: Sure. I think it starts -- bear with me, Your Honor. I believe he starts on Page -- I think it was at the beginning. If we start, start talking on Page 2, he starts talking about the snail-pace litigation resulting in when I became involved in the case and placing a call to him.

Ms. McGinley balked, claiming she is unable to accept service. I'm not sure why they're gaslighting. I don't know what's going on here. He's quoting letters from Ms. Sibley, who is with the University of Maryland. That's on Page 3. He then makes comments about the electronic health record and that there's been data breaches at this hospital in the past.

He talks about that the University of Maryland said we are not offering anything on this case at this time. He then talks about prior medical malpractice cases against the

University of Maryland, one recently back in February/March where there was a verdict in favor of the plaintiff. And then on Page 12, he indicates what his demand was, $10 million, and they said no. None of this needs to be in the complaint.

THE COURT: (Indiscernible) -- well, I mean, again, you know, maybe there is a way, although it doesn't sound like it because it sound like either side is being, you know, flexible here.

But it seems to me one way to solve what we're doing now at much less time and expense for everybody would be to have Mr. Quzack perhaps amend without counting it as an amendment, you know, take a few things out that really aren't necessary, that we just drop all the sanctions talk, that we sort out a few -- a few issues regarding, you know, whether or not there's any contact with represented parties.

Maybe there is and maybe there isn't, but we just make it clear that that shouldn't happen. We don't have to get into fact-finding on that, but just lay out a few principles and we can move on in the case.

Or we could do motions. But if we do motions, again, you know, I don't -- we can do it altogether, but it sounds like both sides have a lot of grievances and it's going to take a while to do that.

So, Mr. Quzack, I think I know the answer, but, I mean, you know --

MR. JACKSON-QUZACK: Yeah, yes.

(Crosstalk.)

THE COURT: -- (indiscernible) talking about Counsel really aren't necessary and I'm not sure why they're there.

MR. JACKSON-QUZACK: I --

THE COURT: And you --

MR. JACKSON-QUZACK: Your Honor --

THE COURT: -- can say whatever you want, but, you know, again how does that -- how is this helping you with the trier of fact or with anybody else? We could address a lot of this and move on to the merits of the case pretty quickly if we just take a few things out and --

MR. JACKSON-QUZACK: Your --

THE COURT: -- (indiscernible).

MR. JACKSON-QUZACK: Your Honor, I hear you, and I understand that. But basically what you are saying to me is you are basically muzzling me and censoring me when -- based on a standard that is not the Fourth Circuit standard.

They cited a First Circuit case for demeaning language in a complaint that is not the standard, and I am happy to litigate and to brief fully all the standards that they are not complying with. She just sat there and told you (indiscernible), Your Honor --

THE COURT: Okay, well -- okay, I got it. I got it. I got it. I have it, Mr. Quzack. I understand. So we're

going to just do the motions. I understand where, where you are on this, and that's fine. Again, it may take a while to resolve all these, and so the case, we'll just have to keep -- you know, we'll, we'll take it step by step, motion by motion, and, and we'll just see where it goes.

So why don't we do it this way? As you know from the Fourth Circuit or from the local rules, we -- when we have cross-motions we just have four briefs so we don't have three briefs on every motion when it's all happening at the same time.

So we'll start with the defendant's motion to strike since that's the first thing they asked for, and I would ask you to -- if you have any other forms of relief you are looking for that came up in UCF17, the supplemental notice, you can throw it all in there together, Ms. McGinley.

Keep in mind all the page limits, and read the case management order carefully about how to do this. We'll strike any briefs that don't conform to the requirements there.

When are you in a position to file that collective motion?

MS. McGINLEY: Let's see, Your Honor. If I could have --

THE COURT: And take as much time as you need.

MS. McGINLEY: Since I'm just looking at the calendar right here, could I have two weeks?

THE COURT: Sure. So that's June 4?

MS. McGINLEY: Yes. How about -- June 4th is a Thursday. How about June the 5th?

THE COURT: Okay.

And then, Mr. Quzack, in responding, you -- your brief covers two things. One is you respond to everything that Ms. McGinley has raised. You also can file sort of -- or, or in the same brief pursue a cross-motion. Right now, the only one I think I see here is seeking sanctions, which, to be honest, it's probably just two sides of the same coin.

I mean, most of your arguments as to why their motions are meritless would probably be the basis for your argument on sanctions. Obviously, you'll have to --

MR. JACKSON-QUZACK: Yes.

THE COURT: -- (indiscernible) a little bit. But you can do that all in one brief, and, and you don't get extra pages for that. I think it's all going to fit within the time limit or the page limits.

And so if they file their motion on June 5th, when would you be in a position to file your response? The standard is two weeks, so June 19th, or, or that's a holiday, to go a little past that. But if you want more time -- you know, we do this so we avoid extension motions in the middle. If there are things going on --

MR. JACKSON-QUZACK: Yeah.

THE COURT: -- briefing of counsel, we, we just want to -- you can put those things then.

MR. JACKSON-QUZACK: Yeah. Thank you for reminding me that it's a holiday, the -- I believe the Juneteenth holiday, so, yeah. If Ms. McGinley is okay having -- so, also -- I'm sorry, Your Honor.

Just so I'm clear, are you saying that Plaintiffs would not be filing a cross-motion on June 4th or 5th. It would be waiting to respond and then throwing it -- not throwing it all, but putting together all our grievances, as you said, on the -- when we respond. Do I have that correct?

THE COURT: Right. So they'll file a brief just with --

MR. JACKSON-QUZACK: Okay.

THE COURT: -- defendants' motions. And then you --

MR. JACKSON-QUZACK: Um-hum.

THE COURT: -- file one brief that responds to their arguments, but also asserts any affirmative motions. Well, really the only one we have right now --

MR. JACKSON-QUZACK: Okay.

THE COURT: -- and keep it to what's in the letters is the motion for sanctions. So that would be --

MR. JACKSON-QUZACK: Okay. So maybe if, if we -- if Plaintiff and defense counsel is agreeable, could we have our reply back or response due on June -- actually, I'm sorry.

I'm looking at the May calendar. Yeah, the twenty-- the 22nd.

THE COURT: Okay, that's Monday the 22nd. And then the third brief is a reply brief, which, as you may have noted -- well, I haven't told you this. But again I, I really encourage both sides to put everything that's productive in the opening briefs. The reply briefs usually tend to be very repetitive and don't add a lot of value.

So I would ask you to just keep the reply brief to new information. And then of course in the same brief you need to respond to what -- the affirmative motion by Mr. Quzack.

So when would you be ready to file that, Ms. McGinley, if you get the -- their brief on the 22nd?

MS. McGINLEY: Sure, and obviously not knowing how extensive there may be in terms of additional motions by the plaintiff, Your Honor, I just want to allow ourselves enough time.

THE COURT: Well, no. Hold on a second. We've got letters with the motions. Nobody's adding new motions beyond what's in these letters.

MS. McGINLEY: Okay, and so I just want to make sure. Okay. June 22nd. Monday, July 6th?

THE COURT: Okay.

And then any reply brief, which really at this point, Mr. Quzack, is really just responding to arguments on

your motions, so that should be short and sweet. Would the standard two weeks work for that? That's July 20th.

MR. JACKSON-QUZACK: No, Your Honor. I'm sorry, I didn't mean to be -- say an abrupt no. Your Honor, I agree with you, and if they would -- if they're saying June -- I mean, I'm sorry, July 6th -- and normally in the federal courts I practice in, the reply brief is usually a shorter time-turnaround, like you said, given the --

So, I mean, I could have it back to you in a -- that Friday, like on the 10th, because, like you said, it shouldn't be -- because all everything I've argued has been in emails and (indiscernible) and everything, and so I'm interested to see what they have to say in response to what I have already given them. So, yeah, it shouldn't be a long turnaround for the reply brief.

THE COURT: Well, I mean, I'm just going to note it down as the 20th just in case something comes up and you're -- you won't need to ask for an extension.

MR. JACKSON-QUZACK: Okay.

THE COURT: Obviously, if you submit it earlier, all the better. So that's terrific. And then just, just for --

MR. JACKSON-QUZACK: Thank you, Your Honor.

THE COURT: -- clarification, because this happens when we have four briefs, it's a little unclear what the page limits are. My approach to this, what I would suggest is --

now even with the multiple issues, none of these are sort of massively complicated legally or even factually. So I don't think anybody really should be bumping up against page limits on any of these things.

But the way I like to think of it, just to be fair to everyone and not -- I mean, again, a reply brief on the fourth brief usually, as Mr. Quzack said, should be short. Some parties are tempted to write a lot. What I would suggest is, well, we just say collectively each side has 40 pages across their two briefs. You can allocate them any way you want.

Again, I don't think we necessarily need 40 pages, but that way we don't end up with like a 25-page or a 20-page reply brief or people trying to argue that the third brief is really -- the second and third brief should be longer. I think that's usually about the right amount for this.

And anybody have a problem with that?

MS. McGINLEY: That's fine, Your Honor.

THE COURT: Again, you don't have to -- you don't have to use all that up. I'm just saying that just so there's no confusion over this.

MR. JACKSON-QUZACK: Yeah, and the plaintiffs are agreeable. Just -- I'm sorry if, you know, I'm not understanding. I'm just asking for clarification over again. But when you said the 40 pages between the two collective

briefs, that's each. So defense counsel, when they file their opening -- their reply, that's the -- that is the 40 pages combination you're talking about, and then Plaintiffs, would they -- with their opening brief and then reply is the 40 pages combined?

THE COURT: Yeah, yeah. So you --

MS. McGINLEY: Okay.

THE COURT: Each one -- the first and third, that adds up to 40. The second and fourth add up to 40. Again, I don't we really need that amount in -- on either side, but just so that we have -- we just have a baseline everyone's working off of. That's what I would -- that's what I'm going to impose. So if your opening one is 30, then you have 10. If your opening one is 40, you have zero. However you want to do it.

Okay, anything else we should discuss while we're here today? We'll issue an order with those dates on the briefing, and we'll just take it step by step. Hopefully, as time goes on I encourage everybody to talk to each other and maybe some of these issues can be narrowed, but again we'll do it one step at a time. Anything else (indiscernible)?

MS. McGINLEY: This is Anne Marie McGinley, Your Honor. Just very briefly, I assume once the Court rules on the motion to strike, at such time then the Court will issue a deadline for the defendants' responsive pleading?

THE COURT: Well, yeah, I think so.

MS. McGINLEY: Okay, okay.

THE COURT: Any -- anything else from you, Mr. Quzack?

MR. JACKSON-QUZACK: No, Your Honor. Thank you for your time.

THE COURT: Thank you.

Good luck with the case, everyone. Have a good day.

MS. McGINLEY: Thank you, Your Honor. Thank you. Thank you.

(Whereupon, at 10:28 a.m. , the hearing concluded.)

## C E R T I F I C A T E

I hereby certify that the foregoing is a correct transcript from the duplicated electronic sound recording of the proceedings in the above-entitled matter.

______________________________
Kristina Ford, Transcriber
Willow Transcription